**BLANK ROME LLP**
*A Pennsylvania LLP*
Stephen M. Orlofsky
New Jersey Resident Partner
Philip N. Yannella
Thomas P. Cialino
300 Carnegie Center, Suite 220
Princeton, NJ 08540
Telephone: (609) 750-2646
Facsimile: (609) 897-7286
Stephen.Orlofsky@BlankRome.com
Philip.Yannella@BlankRome.com
Thomas.Cialino@BlankRome.com

*Attorneys for Defendant, Cybo Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CYBO COMPANY, RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities, <br><br> Defendants. | Civil Action No. 1:25-cv-11948- <br><br> HB *Electronically Filed* <br><br><br><br> **DEFENDANT, CYBO COMPANY'S, SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |

155546999

Defendant, Cybo Company ("Cybo"), by and through its undersigned counsel, hereby files the following supplemental brief in support of its Motions to Dismiss Plaintiffs' First Amended Complaint.

## I.  <u>INTRODUCTION</u>

As set forth in the correspondence that Cybo filed with this Court earlier today, Cybo has joined in: 1) the Consolidated Motion to Dismiss Plaintiffs' Complaint that was filed on June 10, 2024 in the action captioned as *Atlas Data Privacy Corporation, et al. v. Lightbox Parent, L.P., et al.*, Case No. 1:24-cv-04105-HB (D.N.J.) (the "Lightbox Action"); 2) the Consolidated Motion to Dismiss Pursuant to Rule 12(b)(6) that was filed on March 18, 2025 in the action captioned as *Atlas Data Privacy Corporation, et al. v. DM Group, Inc., et al.*, Case No. 1:24-cv-04075-HB (D.N.J)[1] and 3) the Consolidated Motion to Dismiss Pursuant to FRCP 12(b)(2) that was filed on March 18, 2025 in the action captioned as *Atlas Data Privacy Corporation, et al. v. GoHunt LLC, et al.*, Case No. 1:24-cv-04380-HB

---

[1]    In addition, to the extent that this Court enters an Order denying Cybo's request for dismissal of the Amended Complaint pursuant to Rule 12(b)(6) before Plaintiffs file an opposition and Cybo files a reply, Cybo also joins in the arguments that were raised in the consolidated reply brief that was filed on June 3, 2025 in the action captioned as *Atlas Data Privacy Corporation, et al. v. DM Group, Inc.*, Case No. 1:24-cv-04075-HB (D.N.J).  In addition, Cybo also joins in the arguments that were raised in the consolidated reply brief that was filed in the Lightbox Action on September 13, 2024.

(D.N.J) (collectively, the "Consolidated Motions to Dismiss").[2]   Cybo files this supplemental brief for the sole purpose of supplying this Court with additional information in order to demonstrate that Plaintiffs' First Amended Complaint (the "Amended Complaint") should be dismissed with prejudice for lack of personal jurisdiction and because Plaintiffs have failed to state a claim upon which relief can be granted.

As an initial matter, the Amended Complaint should be dismissed for lack of personal jurisdiction because Plaintiffs do not – and cannot – allege sufficient "continuous and systematic contacts" required to subject Cybo, an Oregon corporation, to general personal jurisdiction in New Jersey.  Cybo is likewise not subject to specific jurisdiction in New Jersey because Plaintiffs fail to allege in any way (generally or with particularity) that Cybo purposefully availed itself of New Jersey's jurisdiction simply by maintaining a website that is generally available to business subscribers nationwide.

Moreover, Plaintiffs' Amended Complaint should be dismissed for failure to state a claim because the Amended Complaint consists of a series of conclusory and boilerplate allegations that fail to establish necessary elements of a claim under Daniel's Law.  Thus, as set forth below and for the reasons set forth more fully in

---

[2]      Unless otherwise indicated, capitalized terms have the same meaning as those set forth in the Consolidated Motions to Dismiss.

155546999

the Consolidated Motions to Dismiss, Cybo respectfully requests that this Court dismiss the Amended Complaint with prejudice.

## II.  **SUPPLEMENTAL FACTUAL BACKGROUND**

Cybo is an Oregon corporation with a principal place of business located in Oregon.  *See* Declaration of Sean Lindsey ("Lindsey Dec.") at ¶2.  Cybo is wholly owned by Sean Lindsey, Tom Lindsey, and Jennifer Lindsey, three individuals who reside in Oregon. *Id*. at ¶3.  Cybo has never had any offices or physical locations in New Jersey, owned any property in New Jersey, or owned or operated any servers in New Jersey.  *Id*. at ¶4.  Cybo has no bank accounts in New Jersey, and it has no agents, employees, directors, officers, members or managers located or residing in New Jersey. *Id*. at ¶¶5-6.

The services that Cybo provides are available as equally in New Jersey as they are in all other states.  *Id*. at ¶27.  Cybo does not advertise in New Jersey, does not target its website or services specifically to New Jersey, and it does not tailor or target any advertising or marketing campaigns specifically to New Jersey.  *Id*. at ¶¶8, 14.  In addition, Cybo has not conducted or solicited business in New Jersey and has not engaged in any persistent course of conduct therein.  *Id*. at ¶¶12-13.

Cybo operates a website called AllPeople that is located at https://allpeople.com and that contains a directory of business contacts throughout the United States.  *Id*. at ¶25.  AllPeople is primarily used by business professionals

3

155546999

to perform searches for other professionals, and AllPeople does not contain a directory of residential addresses and telephone numbers. *Id*. at ¶26.   AllPeople is generally available to businesses across the world, and there are no advertisements directed specifically toward New Jersey citizens. *Id*. at ¶27.

The boilerplate allegations contained in the Amended Complaint are substantively identical to the generic, "one size fits all" averments that are analyzed at length in the Consolidated Motions to Dismiss. *See* **Exhibit A**.  In addition, the small grouping of allegations that are specific to Plaintiffs' dealings and alleged communications with Cybo lend no support to their claims.  For instance, while Plaintiffs supply a screenshot from AllPeople and allege that disclosure of the information contained therein constitutes a violation of Daniel's Law (*see* Ex. A at ¶45), all of the information contained in this screenshot is redacted and there is no way to confirm whether the information contained in this screenshot belongs to a Covered Person.

Moreover, although Plaintiffs supply a screenshot from an email that Peter Andreyev ("Andreyev") sent to Cybo on December 29, 2023 (*see* Ex. A at ¶57), this Cybo's records indicate that the "Home Address" that was referenced in this email has never been displayed or disclosed on AllPeople.  Lindsey Dec. at ¶28.  In addition, the address that was disclosed for Andreyev on AllPeople was a business address for the New Jersey State Policemen's Benevolent Association.  *Id*.

4

Moreover, AllPeople's database did not contain the addresses or telephone numbers for any of the remaining named Plaintiffs. *Id*. at ¶29. Cybo's Customer Service Department responded to several of the takedown requests submitted by Atlas Data Privacy Corporation ("Atlas") in order to seek further information as to where the purported protected information was allegedly located on AllPeople, but Atlas did not respond to any of these communications. *Id*. at ¶30. After reviewing the communications that it received from Atlas and its internal records, Cybo determined that it was very likely that AllPeople did not disclose the home addresses and telephone numbers that were referenced in the purported takedown requests that it received. *Id*. at ¶31.

## III.    <u>ARGUMENT</u>

### A.    **This Court Lacks Personal Jurisdiction over Cybo.**

#### i.    <u>Cybo is Not Subject to General Jurisdiction in New Jersey</u>.

Plaintiffs cannot plausibly allege that Cybo is subject to general jurisdiction in New Jersey insofar as Cybo is an Oregon corporation with a principal place of business located in Oregon and Plaintiffs have not pled any information to suggest that Cybo maintains any connection with New Jersey, let alone a "continuous and systematic" presence therein. Indeed, Plaintiffs' conclusory allegations that "This Court has jurisdiction because the parties reside and/or conduct business in New Jersey" (Ex. A at ¶47) are woefully insufficient to show that Cybo is subject to general jurisdiction. The only purported "business" that Cybo conducts in New

5

Jersey is the alleged presence of the names and contact information of Covered Persons through AllPeople. Even assuming that these allegations are true, they do not demonstrate the type of substantial or continuous and systematic conduct that would render Cybo "at home" in New Jersey.

Accordingly, there is no basis for this Court to exercise general personal jurisdiction over Cybo.

  ii. <u>Cybo is Not Subject to Specific Jurisdiction in New Jersey.</u>

Moreover, Cybo is not subject to an exercise of specific jurisdiction because it has not purposefully availed itself of or purposefully directed its activities into New Jersey. Cybo does not advertise in New Jersey, does not target its website or services specifically to New Jersey, and it does not tailor or target any advertising or marketing campaigns specifically to New Jersey. Lindsey Dec. at ¶¶8, 14.

The only connection this case has to New Jersey is the unilateral acts of Plaintiffs in purportedly submitting takedown requests to Cybo. However, Plaintiffs cannot show that Cybo directly targeted New Jersey in any way given that AllPeople is generally available to users across the world and Cybo has not published any New Jersey-specific advertisements or otherwise made a direct appeal to New Jersey citizens. The mere fact the names and contact information of certain New Jersey residents is allegedly available by running searches through AllPeople does not

establish minimum contacts with New Jersey and does not constitute "deliberate targeting" of this forum.

Moreover, and as set forth more fully in the Consolidated Motions to Dismiss, the exercise of specific jurisdiction is unwarranted because no strong connection exists between this forum and the claims that Plaintiffs are asserting against Cybo. The only connection between the claims and this forum is the Plaintiffs' alleged unilateral actions of sending takedown requests to Cybo. Prior to Cybo's purported receipt of these requests, it had no connection to Daniel's Law, Plaintiffs, or the State of New Jersey. Plaintiffs' alleged unilateral outreach to an out-of-state defendant cannot support the establishment of specific jurisdiction in New Jersey.

Finally, assuming purely for the sake of argument that Plaintiffs can show that their causes of action arise out of or relate to Cybo purposefully availing itself to this forum, no personal jurisdiction exists because such an assertion would unreasonably burden Cybo, an out-of-state entity with no significant business operations or a physical presence in New Jersey. Cybo's only connection to New Jersey is the maintenance of a website that is available to users throughout the world. Cybo could not have reasonably anticipated that its operation of AllPeople would cause it to be haled into New Jersey to defend against Plaintiffs' attenuated claims. Accordingly, an assertion of jurisdiction over Cybo would not comport with standards of fair play and substantial justice.

155546999

**B.    Plaintiffs' Daniel's Law Claim Fails Because the Amended Complaint Fails to Plausibly Allege Several Essential Elements of a Claim.**

Even if personal jurisdiction is found to exist over Cybo, the Court should nonetheless dismiss the Amended Complaint with prejudice because it fails to state a claim upon which relief can be granted under Daniel's Law.  For the sake of efficiency, Cybo will not restate the arguments from the Consolidated Motions to Dismiss that set forth the litany of reasons why Plaintiffs' generic allegations fail to assert a plausible claim against Cybo under Daniel's Law.  Instead, Cybo will focus on two critical deficiencies in the Amended Complaint that mandate dismissal.

First, Plaintiffs cannot show that the 10-business day statutory period for compliance with Daniel's Law ever began to run because they have not plausibly alleged that valid takedown notices were ever sent to Cybo in the first place.  Under Daniel's Law, the recipient of the written takedown notice must: (1) actually possess the "home address or unpublished home telephone number of any covered person;" and (2) then fail to "cease the disclosure of the information and remove the protected information from the Internet or where otherwise made available" within the 10-business-day statutory period following receipt of the written notice.  N.J.S.A. §56:8-166.1(a)(1).

The Amended Complaint, however, does not plausibly allege that Cybo ever possessed protected information of any of the Plaintiffs or any Covered Person.  The

155546999

purported screenshot of AllPeople included in the Amended Complaint is redacted and establishes nothing. Moreover, it is not plausible that the redacted information depicted in the Amended Complaint is actually protected under Daniel's Law. AllPeople is a business directory that is designed for use by business professionals, and it does not contain a directory of residential addresses and telephone numbers.[3] There is, thus, no plausible basis to infer that the screenshot contains protected information.

Second, even assuming that the Amended Complaint did plausibly allege that Cybo possessed protected information prior to Plaintiffs allegedly submitting takedown requests, the Amended Complaint does not allege that Cybo "disclosed" this information after the 10-business day statutory compliance period elapsed. Rather than pleading any facts that would plausibly support a claim that Cybo possessed and improperly disclosed protected information after the statutory 10-day deadline, Plaintiffs ask that the Court assume these facts simply because Cybo operates a website that contains a business directory. This faulty inference, however, is not a substitute for factual pleading. Accordingly, Cybo respectfully submits that

---

[3] Tellingly, the "Home Address" that was referenced in Andreyev's email has never been displayed or disclosed on AllPeople. Lindsey Dec. at ¶28. Instead, and true to the fact that AllPeople is a directory of business address and business telephone numbers that is designed for use by business professionals, the only address that was disclosed for Andreyev on AllPeople was a business address for the New Jersey State Policemen's Benevolent Association. *Id*.

this Court should dismiss the Amended Complaint for failure to state a claim under Daniel's Law.

## IV.    **<u>CONCLUSION</u>**

For the foregoing reasons and those set forth in the Consolidated Motions to Dismiss, Cybo respectfully request that this Court enter an Order dismissing the Amended Complaint with prejudice.

Respectfully submitted,

Dated: October 16, 2025            <u>*s/ Stephen M. Orlofsky*</u>
                                   **BLANK ROME LLP**
                                   *A Pennsylvania LLP*
                                   Stephen M. Orlofsky
                                   New Jersey Resident Partner
                                   Philip N. Yannella
                                   Thomas P. Cialino
                                   300 Carnegie Center, Suite 220
                                   Princeton, New Jersey 08540
                                   Tel: (609) 750-2646
                                   Stephen.Orlofsky@blankrome.com
                                   Philip.Yanella@blankrome.com
                                   Thomas.Cialino@blankrome.com

                                   *Attorneys for Defendant, Cybo Company*

155546999

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen M. Orlofsky, hereby certify that I caused a true and correct copy of the foregoing document to be served on all counsel of record via this Court's electronic filing system.

**BLANK ROME LLP**

Dated: October 16, 2025

*s/ Stephen M. Orlofsky*
Stephen M. Orlofsky

# **<u>EXHIBIT A</u>**

**PEM LAW LLP**
Rajiv D. Parikh, Esq. (032462005)
Victor Andreou, Esq. (295502021)
Jessica A. Merejo, Esq. (288592020)
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Tel.: (973) 577-5500
Email: rparikh@pemlawfirm.com
         vandreou@pemlawfirm.com
         jmerejo@pemlawfirm.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN, <br><br>           Plaintiffs, <br>     v. <br><br> CYBO COMPANY, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*, <br><br>           Defendants. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION – MIDDLESEX COUNTY <br> DOCKET NO.: MID-L-898-24 <br><br> **CIVIL ACTION** <br><br><br> **FIRST AMENDED COMPLAINT** |

Plaintiffs, Atlas Data Privacy Corporation ("Atlas"), *as assignee of individuals who are Covered Persons*; Jane Doe-1 and Jane-Doe 2, *law enforcement officers*; Scott Maloney; Justyna Maloney; Patrick Colligan; Peter Andreyev; and William Sullivan (hereinafter and collectively, the "Plaintiffs"), by and through counsel, PEM Law LLP hereby submit this First Amended Complaint against Defendants and state as follows:

**INTRODUCTION**

1.       In these tumultuous times, it is critical that the most sensitive personal information of current and former public servants be protected from unwarranted disclosure.  As set forth below,

Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors—and their families—with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

2.      This complaint seeks to protect those important rights against companies brokering data and choosing profit and commercial gain over a critical public interest and the unequivocal mandate of the law.  Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve (and have served) critical judicial and law enforcement roles.

3.      The Legislature and Governor unanimously agree that the basic safety of those who serve—and their families—must be assured.  Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of these public servants.  Our judges, law enforcement officers, and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

4.      With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law.  Consistent with the statutory scheme, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors.  Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

## **BACKGROUND**

### **Passage of Daniel's Law in New Jersey**

5.         In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was murdered by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just 20 years old and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents. By the time his mother, a Judge, came to the door to check on what happened, the killer had fled. But her husband was critically wounded, and Daniel tragically died from the gunshot.

6.         During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and he went to their home that day intending to kill her. Investigators eventually connected this attack with the same perpetrator's shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to the case that was pending before Daniel's mother.

7.         Critically, the gunman was able to find the home addresses of his murder victims through the various people finder resources available on the internet,[1] the same kind of data broker services at issue in this case.

### **New Jersey Passes Daniel's Law in 2020**

8.         In response to Daniel's murder, New Jersey swiftly enacted Daniel's Law in November 2020. P.L. 2020, c. 125 codified in N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1. Daniel's Law allows current and former public servants—including judges, law enforcement

---

[1] https://www.cbsnews.com/news/esther-salas-son-murder-roy-den-hollander-48-hours/.

officers, and prosecutors—and their eligible family members (i.e., "Covered Persons") to send written nondisclosure requests to data brokers. Once a 10-business day period following such a request has passed, the data broker is prohibited from disclosing or otherwise making available the name and home address or unpublished home telephone number of the Covered Person. Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of judges and prosecutors.

9.       Any such Covered Person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

10.      Data brokers must cease disclosure of this protected information within 10 business days of receiving a written nondisclosure request from a Covered Person.

11.      To facilitate the enforcement of Daniel's Law, the New Jersey Legislature expressly provided that an enforcement action could be brought by a Covered Person or by the Covered Person's assignee.  N.J.S.A. 56:8-166.1(b).

### Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022

12.      Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law. The Chief Justice was quoted stating, "[t]he law requires every judge to swear an

oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety . . . [a] judicial system cannot and should not live in fear."[2]

13.     The federal bill, which had broad bipartisan support in both the House and Senate, protected the personally identifiable information of judges and their immediate family from disclosure by data brokers. It also allowed federal judges to redact their personal information displayed on federal government websites.

14.     In December 2022, the U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached,[3] and it was signed by President Biden.[4]

**<u>Violence Against Police Officers and Judges Has Not Stopped</u>**

15.     Despite these efforts, violence against judges, law enforcement officers, and prosecutors remains a continuing and serious threat.  These public servants put their lives on the line every day, which is clearly exhibited by the numerous horrific stories of violence beyond the murder of Daniel Anderl.  For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers while they were inside with their 10-day old infant.  That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators.[5]  On the contrary, the officers were targeted specifically because they chose to go into public service and protect their community.

---

[2]     www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/.
[3]     https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act.
[4]     https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html.
[5]     https://www.forbes.com/sites/jemimamcevoy/2020/09/18/shooters-open-fire-on-home-of-new-jersey-police-officers-in-targeted-attack-chief-says/.

16.     More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling.[6] The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005.[7]

17.     These violent incidents demonstrate the risk to public servants and their families resulting from the open sale and dissemination of their most personal information, including their home addresses and/or unpublished home telephone numbers.  These incidents also demonstrate the risk to the broader community should public officials be denied their statutory privacy rights. The risk that one might be violently targeted at their home may disincentivize individuals from pursuing a career in public service.  This undermines the public interest—as the State and federal governments have recognized in passing Daniel's Law and its federal counterpart.

## THE PARTIES

### The Individual Plaintiffs

18.     Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey.  Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state.  Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence.  In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified.  Officer Doe-1 lives in the home with her spouse and their young child.  Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the

---

[6] https://www.cnn.com/2023/10/20/us/maryland-judge-killing-investigation-andrew-wilkinson/.
[7] https://www.cnn.com/2022/06/04/us/wisconsin-judge-killed-targeted-attack/.

light on while the child was playing inside. Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address. Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-1's movements to and from her home, immediately prior to the task force initiating arrests.

19.     Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children. Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate. The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder. This death threat was investigated and considered credible enough to result in a successful criminal prosecution. Part of Officer Doe-2's current duties include working in her correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

20.     Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Department. They live together in New Jersey with their two young children. In April of 2023, Officer Maloney responded to a routine

call of a suspicious individual outside the Motor Vehicle Commission in Rahway.  The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers.  A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved.  In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed.  Overall, the encounter was routine and ended uneventfully.

21.    The resulting video footage was selectively edited and posted to YouTube.  Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video.  Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target himself, due to their relationship as a married couple and his own status as a police officer.  Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

22.    One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood."  The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information.  Sergeant Maloney refused to comply with any demands.  He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating

the extortion demand.  In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

23.    Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and alerted police.  Responding officers arrested two men - who were armed - for unlawful possession of a firearm.  Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest.  Officer Maloney and her two young children were at home at the time.

24.    Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey.  Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.  The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

25.    Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department.  Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state.  During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service.  Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from

harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

26.     Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections.  Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole.  During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service.  Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility.  These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and their family members.  Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**Plaintiff Atlas and its Assignors**

27.     Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

28.     As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 18,533 individuals who are all "Covered Persons" under Daniel's Law (together, the "Covered Persons" and each a "Covered Person"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

29.     Each Covered Person is an (a) active, formerly active, or retired judicial officer, law enforcement officer, or child protective investigator in the Division of Child Protection and Permanency, or prosecutor, as those terms are defined in N.J.S.A. 47:1A-1.1; or (b) immediate family member residing in the same household as such judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, or prosecutor. Thus, each individual meets the definition of "Covered Person" set forth in Daniel's Law, N.J.S.A. 56:8-166.1.

30.     Each Covered Person resides, works, previously resided or worked in New Jersey, or is a family member residing at the same address as such as a person, and has a claim or claims against Defendants for failing to comply with Daniel's Law.

31.     As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

32.     Defendants have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

33.     In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas, in writing, as permitted under the statute. Such assignments expressly and "irrevocably assign to Atlas or a designated affiliate of Atlas (the 'Assignee') the exclusive right to civil enforcement of all claims" under Daniel's Law.

34.     Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other Covered Persons.  Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, has been to increase the safety and well-being of their members and their members' families by helping those members understand and assert the rights provided to them by the law.

35.     Upon signing up for Atlas, a Covered Person is asked a series of questions to collect required personal information and qualify his or her eligibility under Daniel's Law.  Once eligibility is confirmed, the Covered Person is shown a page explaining how the Atlas platform works:

## How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1   **We identify** data brokers that may be disclosing your personal information. As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2   **You select** the data brokers to whom you want to send takedown notices. We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3   **You review** takedown notice templates. AtlasMail provides you with templates for takedown notice emails.

4   **You send** takedown notices. Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

Back                                                                    Next

36.     AtlasMail is an email service operated by Atlas.  Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use.  A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:



37.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the Covered Person is then presented with a page on which he or she can review his or her home addresses and unpublished home telephone numbers, a nondisclosure request template, and a recommended list of data brokers to send notices to. On this page the Covered Person can choose whether or not to send nondisclosure requests. If the Covered Person

chooses not to send nondisclosure requests to the recommended list, they can select individual recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a nondisclosure request.



38.    Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox.  AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:





39.     With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons.

40.     Because this lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight, Atlas has not included the Covered Persons' personal information in this public filing. However, Atlas will work with the Court and Defendants to implement an appropriate protective order and then provide Defendants with the written assignments and

relevant information for each of the Covered Persons.  Our courts have already approved this privacy-protecting approach.[8]

**Defendants**

41.    Allpeople.com is a domain name and website that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of Covered Persons (the "Website").  The Website is owned and/or operated by defendants Cybo Company ("Cybo Company"), ABC Companies 1-10, and/or Richard Roes 1-10, an unknown entity (or entities) and/or individuals.

42.    Defendant Cybo Company is an Oregon corporation that has a principal place of business at 84451 Greengate Road, Florence, Oregon 97439, and transacts business within the State of New Jersey. Cybo Company discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of Covered Persons.

43.    Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants failures to comply with the law.

---

[8] For example, the Court recently held in another Daniel's Law action that allegations similar to those asserted here pleaded "sufficient facts to show that the assignors are covered persons under Daniel's Law," and "in fact have standing," noting the anticipated production of Covered Persons' information pursuant to an appropriate protective order. *Atlas Data Privacy Corp., v. Attom Data Solutions, LLC, et al.*, Docket No.: MER-L-273-24 (Law Div., June 20, 2024) (denying motion to dismiss).

44.     Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to businesses and individuals who operate or reside in New Jersey.  Those websites include: allpeople.com.

45.     In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).  The following is a redacted example of the detailed information provided by Defendants,[9] in violation of Daniel's Law:

---

[9] Consistent with the mandate of Daniel's Law and the public policy considerations underpinning <u>Rule</u> 1:38-7, personal information in the search results has been redacted from the exemplar screenshots included herein.





46.    Daniel's Law was passed to protect public servants and their families from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

## JURISDICTION AND VENUE

47.    This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

48.    Venue is proper pursuant to R. 4:3-2, in that Middlesex County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business.  In addition, many of the events giving rise to this action occurred in this County.

## FACTS COMMON TO ALL COUNTS

49.     As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 codified as N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1, et seq.).

50.     Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

51.     Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

52.     This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

53.     Daniel's Law was amended in 2023, as P.L. 2023, c. 113.  The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

54.     Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, et seq., went into effect immediately.

55.     As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided: [10]

          3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a

_____

[10] https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF

person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.

b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.

c. The court shall award:

(1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorney's fees and other litigation costs reasonably incurred; and

(4) any other preliminary and equitable relief as the court determines to be appropriate.

d.  For the purposes of this section:

. . . "Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

56.    Starting on or about December 29, 2023, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

57.    For example, a true and correct copy of the email directly from Plaintiff Andreyev (with personal information redacted) is pasted here:

## Data Subject Request – Redaction/nondisclosure Request

| | |
|---|---|
| **To** | webmaster@allpeople.com |
| **From** | Peter Andreyev <████████████@atlasmail.com> |
| **Date** | Fri, Dec 29, 2023 4:13 PM |

Allpeople
December 29, 2023

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: Peter Andreyev

Home Address: ████████████████████████

Sincerely,
Peter Andreyev

58.     Defendants failed to cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs and Covered Persons within the time period required by Daniel's Law.  Thus, Defendants' disclosure or redisclosure or the otherwise making available of the protected information of the Individual Plaintiffs and Covered Persons following the statutory period of ten (10) business days violates Daniel's Law.

59.     Upon information and belief, even as of the date of this filing, Defendants still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons

continues to be disclosed, re-disclosed or otherwise made available, despite Defendants' receipt of requests for nondisclosure more than ten business days ago.

60.     All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs, who assert their claims directly in this action) have assigned in writing their claims against Defendants to Atlas. All of the assignments were completed in writing before the date of the filing of the initial Complaint.

61.     Following the entry of a protective order filed in this Court, Plaintiffs will provide under a confidential designation a full and complete list of the following:

    a.   Names of each of the 18,533 assignors referenced in paragraph 28; and

    b.   The factual basis for the person to be considered a "Covered Person" as defined in N.J.S.A. 56:8-166.1(d), that is, a judicial officer, law enforcement officer, child protective investigator in the Division of Child Protection and Permanency, as those terms are identified in N.J.S.A. 47:1A-1.1 or prosecutor and any immediate family member residing in the household of individuals in these categories.

62.     The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

## COUNT ONE

### (Daniel's Law)

63.     The allegations of the Complaint set forth above are incorporated herein as if set forth at length.

64.     The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

65.     Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

66.     Upon information and belief, even as of the date of this filing, Defendants still refuse to fully comply with Daniel's Law and protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and Covered Persons continues to be disclosed, re-disclosed or otherwise made available, despite Defendants' receipt of requests for nondisclosure more than ten (10) business days ago.

67.     Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitutes a separate violation under the law.

68.     Defendants' continued disclosure in violation of Daniel's Law, despite having received notice as required under the statute, constitutes willful or reckless disregard of the law.

69.     As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request that the Court enter all available and appropriate legal and equitable relief.

**WHEREFORE**, Plaintiffs request that Judgment be entered against Defendants as follows:

A.      Ordering that Defendants and the Website immediately comply with Daniel's Law, and cease the disclosure of the Individuals Plaintiffs' and the Covered Persons' names, home addresses, and unpublished home telephone numbers wherever disclosed or re-disclosed on the Internet or otherwise made available;

B.      Awarding actual damages, not less than liquidated damages under Daniel's Law, at "$1,000 for each violation";

C.      Awarding an additional amount in punitive damages, to be determined by the Court, for "willful noncompliance" as allowed under Daniel's Law;

D.      Awarding reasonable attorneys' fees, interest (pre and post judgment) and litigation costs incurred;

E.      Ordering injunctive relief requiring that Defendants comply with Daniel's Law, and remove the Individual Plaintiffs' and the Covered Persons' protected information wherever disclosed;

F.      Entering equitable or other permanent injunctive relief requiring Defendants to comply with Daniel's Law, including the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law; and

G.      Awarding such other and further relief against Defendants as the Court deems equitable and just.

Respectfully submitted,

Dated: May 21, 2025

**PEM LAW LLP**
*Attorneys for Plaintiffs*


By: */s/ Rajiv D. Parikh*
Rajiv D. Parikh, Esq.
Victor Andreou, Esq.
Jessica A. Merejo, Esq.
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
Email:  rparikh@pemlawfirm.com
          vandreou@pemlawfirm.com
          jmerejo@pemlawfirm.com

## DESIGNATION OF TRIAL COUNSEL

The Court is advised that pursuant to New Jersey Court Rules 4:5-1(c) and 4:25-4,

Rajiv D. Parikh, Esq. is hereby designated as trial counsel for Plaintiffs in this matter.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: May 21, 2025           By: */s/ Rajiv D. Parikh*
                                   Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to R. 4:5-1, it is hereby stated that the matter in controversy between the parties

hereto is not the subject of any other action pending in any other Court or of a pending arbitration

proceeding to the best of my knowledge and belief.  Also, to the best of my knowledge and belief,

no other action or arbitration proceeding between the parties hereto is contemplated.  Further, other

than the parties set forth in this pleading and the previous pleadings, if any, at the present time we

know of no other parties that should be joined in the within action.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: May 21, 2025           By: */s/ Rajiv D. Parikh*
                                   Rajiv D. Parikh, Esq.

## CERTIFICATION PURSUANT TO RULE 1:38-7(b)

Pursuant to Rule 1:38-7(b), it is hereby stated that all confidential personal identifiers have

been redacted from documents now submitted to the Court and will be redacted from all documents

submitted in the future.

**PEM LAW LLP**
*Attorneys for Plaintiffs*

Dated: May 21, 2025           By: */s/ Rajiv D. Parikh*
                                   Rajiv D. Parikh, Esq.